## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America,<br><br>Plaintiff,<br><br>v.<br><br>Vannesa Violante-Lujano,<br><br>Defendant. | Case No. 23-cr-315(02) (SRN/DTS)<br><br><br>**ORDER ON DEFENDANT'S OBJECTION TO REPORT AND RECOMMENDATION** |

Garrett S. Fields, United States Attorney's Office, 300 S. 4th St., Ste. 600, Minneapolis, MN 55415, for United States of America

Deborah K. Ellis, Ellis Law Office, 101 E. Fifth St., Ste. 1500, Saint Paul, MN 55101, for Defendant Vannesa Violante-Lujano

SUSAN RICHARD NELSON, United States District Judge

This matter is before the Court on Defendant Vannesa Violante-Lujano's Objections [Doc. No. 69] to Magistrate Judge David T. Schultz's August 21, 2024 Report and Recommendation ("R&R") [Doc. No. 66].  In the R&R, Magistrate Judge Schultz recommended the denial of Ms. Violante-Lujano's Motions to Suppress Evidence [Doc. Nos. 39, 50] and her Motions to Suppress Statements [Doc. Nos. 38, 48].  For the reasons set forth below, the Court overrules Ms. Violante-Lujano's Objections, adopts Magistrate Judge Schultz's R&R, and denies Ms. Violante-Lujano's motions.

## I.    BACKGROUND

### A. Vehicle Stop and Search

Ms. Violante-Lujano, along with co-defendant Israel Maldonado-Benitez, is charged in a one-count indictment that alleges conspiracy to distribute methamphetamine. (Indictment [Doc. No. 1].)

As set forth in the R&R, the events leading to this charge arose out of an undercover drug operation involving the U.S. Drug Enforcement Administration (DEA). (R&R at 1.) DEA agents in Houston, Texas seized approximately 100 kilograms of methamphetamine destined for Saint Paul, Minnesota. (*Id*.) Undercover agents then arranged for a controlled delivery of approximately 100 kilograms of fake methamphetamine, equipped with tracking devices, to the intended recipient in Minnesota. (*Id*.)

On June 22, 2022, at a truck stop in Lakeville, Minnesota, an undercover DEA agent transferred four duffel bags containing fake methamphetamine to Mr. Maldonado-Benitez and Ms. Violante-Lujano. (*Id*. at 1–2.) The undercover agent placed the bags in the trunk of Ms. Violante-Lujano's van, showed Mr. Maldonado-Benitez the contents, and departed. (*Id*. at 2.)

The undercover agent then informed Minnesota State Trooper Anthony Mains about the narcotics transaction and notified him that the suspects were driving northbound in a red Honda Odyssey minivan with Georgia license plates. (*Id*.) Trooper Mains located the vehicle and further observed various equipment and driving infractions and suspicious behavior: objects were hanging from the rearview mirror, the van was traveling at 60 mph in a 70 mph zone, it had crossed over a "left skid stripe," and was following another car too closely. (*Id*.)

Trooper Mains activated his emergency lights and pulled over the minivan. (*Id*.) In his subsequent report related to the stop, he stated that he had stopped the van based on information received from the DEA agent as well as his own observations of traffic and equipment violations. (*Id*.) The ensuing stop lasted approximately 15 minutes. (*Id*. at 2–4.)

Minnesota State Trooper T.J. Bruening joined in the stop and approached the van with Trooper Mains.[1] (*Id*.) From his position on the highway shoulder, Trooper Mains spoke with the driver, Ms. Violante-Lujano, through the front passenger window, and asked for her driver's license and proof of insurance. (*Id*.) She provided a Mexican ID card and an international driver's license that listed a Georgia address. (*Id*. at 2.) The R&R states that "Trooper Mains asked if they were coming from Georgia and Violante-Lujano responded that they were visiting family in Minnesota." (*Id*.) After explaining the violations he had observed and assuring her that she was "not in any trouble," Trooper Mains asked Ms. Violante-Lujano to join him by his squad car while he ran her driver's license and insurance information through his law enforcement database. (*Id*. at 2–3.) They walked back to his squad car, with Trooper Mains sitting in the driver's seat, and Ms. Violante-Lujano standing outside the front passenger window. (*Id*. at 3.) During this time, Trooper Mains asked Ms. Violante-Lujano several questions, including why they were in Minnesota, where they were staying, and how long they planned to stay. (*Id*.)

---

[1] Exhibits cited in the R&R include videos from officers' body worn cameras and squad videos, as well as Trooper Mains' report. (*See* R&R, citing Gov't Exs. 1–3.) Also before the Court are Defendant's Exhibits 1–5, which consist of the DEA investigation report (Def. Ex. 1), Trooper Mains' Report (Def. Ex. 2), and squad car video footage and body worn camera footage (Def. Exs. 3–5.)

In response to the trooper's question about where they had most recently come from, Ms. Violante-Lujano responded, "Lakeview?"  (*Id.*)   However, when Trooper Mains suggested "Lakeville," she agreed.  (*Id.*)  Trooper Mains then asked what they had done there and she responded that she had been shopping for souvenirs for her children.  (*Id.*)  In response to a question from Trooper Mains about where she had been shopping, Ms. Violante-Lujano replied, "We stopped at a gas station . . . we were just wandering around."  (*Id.* at 4.)  Trooper Mains' report reflects that Ms. Violante-Lujano appeared increasingly nervous and her responses seemed rehearsed.  (*Id.*)  When he asked if she and Mr. Maldonado-Benitez had met anyone at the gas station, Ms. Violante-Lujano responded that they had not.  (*Id.*)

Trooper Mains then revealed that his partner had witnessed the narcotics exchange at the gas station, asking, "Did that not happen?"  (*Id.*)  Ms. Violante-Lujano replied, "No, it happened."  (*Id.*)  In response to Trooper Mains' question about the contents of the bags, Ms. Violante-Lujano stated that they contained "stuff that shouldn't be [there]."  (*Id.*)  She stated that she did not know the precise contents of the bags, but knew they contained illegal substances.  (*Id.*)

Trooper Mains then asked for Ms. Violante-Lujano's consent to search the van and she consented.  (*Id.*)  While talking through the next steps, Trooper Mains confirmed that he had Ms. Violante-Lujano's consent to search.  (*Id.*)  Trooper Mains escorted Ms. Violante-Lujano to the backseat of his squad car while Trooper Bruening handcuffed Mr. Maldonado-Benitez, seized his cell phone and wallet, and placed him in the backseat of his car.  (*Id.*)  The troopers then searched the van and discovered four large black duffel bags containing fake methamphetamine.  (*Id.*)

4

### B.   Defendant's Motions to Suppress

Ms. Violante-Lujano moves to suppress evidence from the stop, search, and seizure of her van and its contents.  (Def.'s Mots. to Suppress Evid; Def.'s Mem. in Supp. Am. Mot. to Suppress Evid. [Doc. No. 51] at 2–7.)  She contends that the stop was unreasonably expanded beyond a routine traffic violation and her consent to search was invalidly obtained, in violation of the Fourth Amendment.  (Def.'s Mem. in Supp. Am. Mot. to Suppress Evid. at 2–7)  She also seeks to suppress statements made during the stop, arguing that she was effectively in custody, but did not receive *Miranda* warnings, in violation of the Fifth Amendment.  (Def's. Mots. to Suppress Statements; Mem. in Supp. Am. Mot. to Suppress Statements [Doc. No. 49] at 7–16.)

### C.   R&R

In the R&R, Magistrate Judge Schultz recommended the denial of Ms. Violante-Lujano's motions.  As to her Motions to Suppress Evidence, he found that "[t]he stop did not extend beyond the amount of time reasonable to carry out two 'missions'—to investigate the traffic violations and the drug encounter."  (R&R at 8.)  In addition, he found that Ms. Violante-Lujano voluntarily consented to the search of the van.  (*Id*. at 13–15.) As to the Motions to Suppress Statements, Magistrate Judge Schultz analyzed whether Ms. Violante-Lujano was in custody when she made various statements to Trooper Mains and concluded that she was not.  (*Id*. at 9–13.)  Based on his finding that she was not in custody, he found that no *Miranda* warnings were required.  (*Id*. at 13.)

### D.   Ms. Violante-Lujano's Objections to R&R; Government's Response

Ms. Violante-Lujano raises two objections to the R&R.  First, she asserts a "factual

dispute," apparently challenging the record citation to the following statement in the R&R: "Trooper Mains asked if they were coming from Georgia and Violante-Lujano responded that they were visiting family in Minnesota." (*Id*.) (citing R&R at 2.) While Ms. Violante-Lujano appears to concede that Trooper Mains' BWC video, Gov't Ex. 2, "support[s] the finding that Ms. Violante-Lujano said 'in Minnesota' after stating that they were visiting family," (*id*. at 1), she nevertheless argues that "[n]either of these times [cited in the R&R] support any finding that Ms. Violante-Lujano said 'in Minnesota' after stating they were visiting family." (*Id*. at 2.)

Second, Ms. Violante-Lujano challenges the magistrate judge's finding that the length of the stop was reasonable. (Def.'s Objs. at 2–4.) She points to Trooper Mains' stated reason for the stop, including the presence of impermissible objects hanging from the rear-view mirror and that she was following another vehicle too closely. (*Id.*) She contends that as a traffic stop, the stop was unreasonably expanded, and as an investigative stop, "[t]he narcotics investigation could have been concluded at the truck stop once the fake drugs were transferred to Mr. Maldonado-Benitez." (*Id*.)

In response to Ms. Violante-Lujano's Objections, the Government disputes and discounts as irrelevant her objection to the factual statement about visiting family in Minnesota. (Gov't's Resp. to Objs. at 4–5 n.1.) As to whether the length of the stop was reasonable, the Government maintains that the stop was lawfully initiated, appropriately tailored to the missions at hand, and reasonable in length. (*Id*. at 4–8.)

## II.   DISCUSSION

### A.  Standard of Review

The district court reviews a magistrate judge's recommendations on dispositive matters de novo, undertaking an independent analysis of those portions of the R&R to which a party objects.  28 U.S.C. § 636(b)(1)(C); *see also* D. Minn. L.R. 72.2(b)(3).

### B.  Factual Dispute

The Court overrules Ms. Violante-Lujano's Objection to the factual statement in the R&R that she was visiting family in Minnesota and the R&R's citation to the record in support of that statement.  Under these facts, whether she said she was visiting family in Minnesota or not, the statement has no bearing on the constitutionality of the traffic stop.  (*See* Gov't's Resp. to Objs. at 4 n.1.)  Moreover, as to the accuracy of the citation for the statement, the video exhibit to which the remark is attributed is difficult to hear due to road noise and wind. (*See* Gov't Ex. 2.)  Trooper Mains' report states that in response to his question about where she was traveling, Ms. Violante-Lujano stated "that she was visiting family up in Minnesota." (Def. Ex. 2 at 1.)  Moreover, at some point during her interactions with Trooper Mains, Ms. Violante-Lujano made a statement to that effect, as she concedes in her Objections, "In fact the body worn camera (BWC) of Trooper Mains, which is Government's Exhibit 2 to its filing in Docket # 47, does support the finding that Ms. Violante-Lujano said 'in Minnesota' after stating that they were visiting family."  (Def.'s Objs. at 1.)  Accordingly, for all of these reasons, her objection to this factual statement is overruled.

### C.  Length of Stop

The Fourth Amendment guarantees the "right of the people to be secure in their

persons, houses, papers and effects, against unreasonable searches and seizures." U.S. Const., amend. IV. "A traffic stop constitutes a seizure under the Fourth Amendment," requiring either probable cause or an articulable suspicion that a violation of law has occurred in order to satisfy the Fourth Amendment. *United States v. Peralez*, 526 F.3d 1115, 1119 (8th Cir. 2008). A detaining officer has reasonable suspicion if he has a "'particularized and objective basis' for suspecting legal wrongdoing based on the totality of the circumstances." *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Reasonable suspicion may be based on the collective knowledge of law enforcement officers and "need not be based solely upon information within knowledge of the officer(s) on the scene if there is some degree of communication." *United States v. Shackleford*, 830 F.3d 751, 753–54 (8th Cir. 2016).

While Ms. Violante-Lujano appears to concede that minor traffic violations provided probable cause for the traffic stop, she contends that the officers unreasonably expanded the length of the stop to aid in the narcotics investigation. (Def.'s Objs. at 2–3.) She further contends that the R&R "seemingly countenances the trooper's deceptive practices and the excuse of minor traffic violations as justification for the expanded stop and interrogation of Ms. Violante-Lujano." (*Id*. at 4.)

Whether the length of a police stop is reasonable depends on the seizure's "mission," and whether officers were reasonably diligent in carrying out that mission. *Rodriguez v. United States*, 575 U.S. 348, 350–51 (2015). In *Rodriguez*, the Supreme Court noted that where a police-observed traffic violation forms the *only* basis for the seizure, the seizure "becomes unlawful if it is prolonged beyond the time reasonably required to complete the mission of issuing a ticket for the violation." *Id*. (citation omitted). As noted in the R&R,

8

here, Ms. Violante-Lujano's stop was justified not only by a traffic violation, but by the troopers' reasonable suspicion to investigate the drug transaction.  (R&R at 7.)  Under similar circumstances in *United States v. Rowe*, 878 F.3d 623, 628 (8th Cir. 2017), *cert. denied*, 584 U.S. 954 (2018), the Eighth Circuit found no Fourth Amendment violation where a state trooper pulled over the defendant's car because of overly tinted windows as well as information from a confidential informant that the vehicle contained cocaine. The Eighth Circuit found that even though the trooper cited tinted windows as the basis for the stop, "the probable cause that already existed from the CI's information was enough in this case."  *Id*. at 628–29.  The Eighth Circuit explained,

> The error in Rowe's argument is his focus on the fact that [the trooper] effectuated an investigatory stop based only on the excessive window tint. The stop was not unconstitutionally expanded given that the entire basis for the stop was the drug interdiction, despite the trooper's alternate reasoning offered.

*Id*. at 629.

As noted in the R&R, Trooper Mains was permitted to extend the traffic stop in order to carry out both "missions"—a routine traffic stop investigation and a drug investigation. The Court further agrees with Magistrate Judge Schultz that Ms. Violante-Lujano's 15-minute stop was well within the reasonable range for stops related to drug investigations. (R&R at 8) (citing *United States v. Rederick*, 65 F.4th 961, 966 (8th Cir. 2023) (upholding 27-minute stop to investigate drugs); *United States v. Murillo-Salgado*, 854 F.3d 407, 416 (8th Cir. 2017) (affirming a 23-minute stop to investigate a traffic violation and a drug transaction); *United States v. Magallon*, 984 F.3d 1263, 1279 (8th Cir. 2021) ("[A]dressing the suspicion of drug activity require[s] time.")).

For all of these reasons, the Court finds the traffic stop was reasonable in length.  To the extent the other bases for Ms. Violante-Lujano's suppression motions flow from the duration of the stop, they are likewise denied.

Based upon the foregoing, and all the files, record, and proceedings herein, **IT IS HEREBY ORDERED** that

1. Defendant Vannesa Violante-Lujano's Objections [Doc. No. 69] to Magistrate Judge David T. Schultz's R&R are **OVERRULED**.

2. Magistrate Judge David T. Schultz's August 21, 2024 R&R  [Doc. No. 66] is **ADOPTED** in its entirety.

3. Defendant Vannesa Violante-Lujano's Motions to Suppress Evidence [Doc. Nos. 39 and 50] are **DENIED**.

4. Defendant Vannesa Violante-Lujano's Motions to Suppress Statements [Doc. Nos. 38 and 48] are **DENIED**.


Dated: October 18, 2024

<u>s/Susan Richard Nelson</u>
SUSAN RICHARD NELSON
United States District Judge