**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| United States of America,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>Israel Maldonado-Benitez, Vannesa Violante-Lujano,<br><br>　　　　　Defendants. | Case No. 23-cr-00315 (SRN/DTS)<br><br>**ORDER**<br>**ON CRI MOTIONS** |

David P. Steinkamp and Garrett S. Fields, United States Attorney's Office, 300 South 4th Street, Suite 600, Minneapolis, MN 55415, for the Government.

Thomas C. Plunkett, Attorney at Law, 101 East Fifth Street, Suite 1500, St. Paul, MN 55101; and Katherian D. Roe, Office of the Federal Defender, 300 South 4th Street, Suite 107, Minneapolis, MN 55415, for Defendant Maldonado-Benitez.

Deborah K. Ellis, Ellis Law Office, 101 East Fifth Street, Suite 1500, Saint Paul, MN 55101; and Katherian D. Roe, Office of the Federal Defender, 300 South 4th Street, Suite 107, Minneapolis, MN 55415, for Defendant Violante-Lujano.

SUSAN RICHARD NELSON, United States District Judge

　　　This matter is before the Court on the Government's motions to use a pseudonym for a confidential reliable informant (CRI) who the Government anticipates will testify at trial [Doc. 182] and for a protective order regarding the CRI's identity [Doc. 182]. The CRI allegedly bought drugs from Defendants in Georgia about one month before the drug

1

transaction in Minnesota on which the charges here are based.[1]  For the reasons below, the Court denies both motions.

I.      Background

At trial, the Government intends to offer evidence that in May 2022—about a month before the methamphetamine transaction in Minnesota that gives rise to the charges here—Mr. Maldonado-Benitez sold methamphetamine to a CRI in Georgia and Ms. Violante-Lujano was the driver.  (Doc. 176 at 1–3.)  The evidence includes video surveillance of the transaction and text messages between Ms. Violante-Lujano and a phone number with a Mexico area code that appear to be about the transaction.  (Doc. 167 at 6–8; Doc. 176 at 1, 4.)  In a prior order, the Court rejected Defendants' argument that evidence of the prior transaction should be excluded under the Federal Rules of Evidence, but the Court deferred ruling on whether the Government must disclose the CRI's identity if it introduces the evidence.  (Doc. 179 at 8–13.)

The Government then provided defense counsel with information about the CRI, "including payment records, criminal history and other incentives provided to the [CRI] by the government" with the CRI's "identifying information (name, date of birth and a photograph) redacted."  (Doc. 180 ¶ 5.)  But before disclosing the CRI's identity, the Government seeks a protective order requiring defense counsel not to share any "Protected Material"—including the CRI's name, date of birth, and photograph—with Defendants.

---

[1] The Georgia CRI is not to be confused with the Texas CRI.  After examining the Texas CRI *in camera*, the Court ruled that the Government need not disclose the Texas CRI's identity.  (Doc. 122.)

2

(*Id.*)  The Government also "asks the Court to find that the parties must use a pseudonym when referring to the [CRI] during the trial of this matter."  (Doc. 182.)

Defendants object to both motions.  (Docs. 191 & 192.)  They argue, among other things, that the Government has not made any showing that there is a safety risk to the CRI. (Doc. 191 at 3; Doc. 192 at 2–3.)

## II.    The Law

The Confrontation Clause of the Sixth Amendment to the United States Constitution guarantees a criminal defendant "the right . . . to be confronted with the witnesses against him."  The Supreme Court has identified "two broad categories" of Confrontation Clause issues—(1) those that involve the "literal right to 'confront' the witness at the time of trial," and (2) those "in which, although some cross-examination of a prosecution witness [is] allowed, the trial court [does] not permit defense counsel to 'expose to the jury the facts from which jurors, as the sole triers of fact and credibility, [can] appropriately draw inferences relating to the reliability of the witness.'"  *Delaware v. Fensterer*, 474 U.S. 15, 18–19 (1985) (per curiam) (citations omitted).  The issue before this Court falls into the second category because the Government anticipates that the CRI will testify at trial.

In *Smith v. Illinois*, the "principal witness" testified under a pseudonym about buying drugs from the defendant, and the trial court barred the defendant from asking for the witness's real name and address.  390 U.S. 129, 130–31 (1968).  The Supreme Court held that this violated the defendant's confrontation rights.  *Id.* at 131–33.  The Court reasoned, "when the credibility of a witness is in issue, the very starting point in 'exposing falsehood and bringing out the truth' through cross-examination must necessarily be to ask

3

the witness who he is and where he lives." *Id.* at 131. The Court recognized that a witness's name and address "open countless avenues of in-court examination and out-of-court investigation," and that closing these avenues "effectively . . . emasculate[s] the right of cross-examination itself." *Id.* Without the "opportunity to place the witness in his proper setting and put the weight of his testimony and his credibility to a test," a jury "cannot fairly appraise them." *Id.* at 132 (quoting *Alford v. United States*, 282 U.S. 687, 692 (1931)).

In a concurrence, Justice White, joined by Justice Marshall, left the door open for courts to bar "inquiries which tend to endanger the personal safety of the witness." *Id.* at 133–34. "[I]n these situations," Justice White said, "the State or the witness should at the very least come forward with some showing of why the witness must be excused from answering the question." *Id.* at 134. Important to the Justice's decision to "join the Court's judgment" was that "the State gave no reasons justifying the refusal to answer a quite usual and proper question" and it was "not at all clear that either [the defendant or his counsel] had ever known the witness' real name or knew where he lived at the time of the trial." *Id.*

Following Justice White's lead, circuit courts have since "qualified" *Smith*'s holding. *United States v. Mohamed*, 727 F.3d 832, 838 (8th Cir. 2013). Rather than altogether banning anonymous testimony, courts consider the totality of the circumstances and "gauge the pull of *Smith* . . . by the degree to which its rationale applies." *Siegfriedt v. Fair*, 982 F.2d 14, 18–19 (1st Cir. 1992). In doing so, courts "balanc[e] the public interest in protecting the flow of information against the individual's right to prepare his defense." *United States v. Celis*, 608 F.3d 818, 831 (D.C. Cir. 2010) (quoting *Roviaro v. United*

4

*States*, 353 U.S. 53, 62 (1957)); *see also, e.g.*, *United States v. El-Mezain*, 664 F.3d 467, 492 (5th Cir. 2011) (discussing the "balancing of interests" under *Roviaro*). Among the factors that courts consider are "the crime charged, the possible defenses, the possible significance of the informer's testimony," *Roviaro*, 353 U.S. at 62, "whether the defendant was informed of the witness's real name before the witness testified," *Mohamed*, 727 F.3d at 838 (citing *Siegfriedt*, 982 F.2d at 18), and "whether the defendant was able to cross-examine the witness on his or her background and/or credentials," *id.* (citing *Clark v. Ricketts*, 958 F.2d 851, 854–55 (9th Cir. 1991)).

In one case, the Eighth Circuit found that "no Confrontation Clause violation occurred" where an FBI linguist testified under a pseudonym. *Mohamed*, 727 F.3d at 838. The Government disclosed the witness's real name, qualifications, and experience to defense counsel, but the district court ordered defense counsel not to disclose the witness's name to the defendant after a hearing where "the government argued that the linguist wished to remain anonymous because he had a 'genuine fear of retaliation of physical harm to him physically and/or his family.'" *Id.* at 834; *see also United States v. Mohamed*, No. 8:11-cr-00172 (JFB/TDT), Doc. 46 (D. Neb. Jan. 20, 2012) (citing *El-Mezain*, 664 F.3d at 490–94). Looking at the specific facts, the Eighth Circuit observed that the defendant had an opportunity to effectively cross examine the witness because "defense counsel had the ability to investigate [the witness's] background" and "cross-examine [the witness] on his qualifications and experience." *Mohamed*, 727 F.3d at 838.

In another case, the Fifth Circuit found that the rights of multiple defendants on trial for supporting a terrorist organization were not violated when two witnesses testified using

pseudonyms—an expert witness who testified about Hamas financing and a fact witness who authenticated documents seized during a military operation. *El-Mezain*, 664 F.3d at 490–94. Important to the court's conclusion was that (1) "[t]he Government showed that Hamas and other terrorist organizations seek out the true identities of [Israeli Security Agency] agents and their families and publish descriptions of ISA officers on websites so that they can be targeted," and (2) the defense "had access to significant information regarding the witnesses' employment, nationalities, and backgrounds," along with "substantial material that formed the basis for [the expert's] opinion," meaning "the defense was able to probe for bias and test the basis of the witnesses' knowledge." *Id.* at 492–23. "Under all the circumstances," the Fifth Circuit found, "the defendants had a more than adequate 'opportunity to place the witness[es] in [their] proper setting and put the weight of [their] testimony and [their] credibility to a test.'" *Id.* at 493–94 (quoting *Smith*, 390 U.S. at 132).

Finally, in a case involving a Colombian drug-trafficking organization, the District of Columbia Circuit found that a district court's protective order did not violate multiple defendants' confrontation rights. *Celis*, 608 F.3d at 833. The order "allowed the witnesses from Colombia to testify under pseudonyms but required the government to disclose the witnesses' true identities to defense counsel," who could then share them with their client and one member of the defense team. *Id.* at 829. Despite concerns that the defendants did not have enough time "to prepare for cross-examination" because defense counsel got access to the witnesses' "true identities" only "days before their testimony" and "[t]he prosecution rested on witnesses and events located in a foreign country in which another

6

language was spoken," the D.C. Circuit found that "[t]he protective order and its management by the district court reflect[ed] an appropriate balancing of interests in the relevant case-specific context." *Id.* at 833. The court emphasized that the Government's motion had "set out in vivid detail" the safety concerns that motivated the request, presenting "evidence that in Colombia the [drug trafficking organization] had killed people suspected of helping to arrest [one of the defendants] and had threatened to kill cooperating witnesses." *Id.* at 829, 833.

Based on these cases, and others, courts have recently developed a helpful framework. *See United States v. Gutierrez de Lopez*, 761 F.3d 1123, 1139–43 (10th Cir. 2014) (collecting cases). "First, the government must demonstrate a threat to the witness's personal safety." *Id.* at 1140. The Government "bears the burden of demonstrating that 'the threat to the witness [is] actual and not a result of conjecture.'" *United States v. Ramos-Cruz*, 667 F.3d 487, 500 (4th Cir. 2012) (quoting *United States v. Palermo*, 410 F.2d 468, 472 (7th Cir. 1969)). It "need not come from the defendants themselves." *Gutierrez de Lopez*, 761 F.3d at 1141 (citing *Celis*, 608 F.3d at 832). "But 'a generalized statement' about danger—such as '*anyone* who testifies against one of [a gang's] members faces danger from [that gang]'"—is not enough. *Id.* (quoting *Ramos-Cruz*, 667 F.3d at 500). "Second, if the government demonstrates a threat, courts then consider whether the lack of the witness's identifying information deprived the defendant of an opportunity for effective cross-examination." *Id.* (citing *Ramos-Cruz*, 667 F.3d at 500; *El-Mezain*, 664 F.3d at 492–93; *Mohamed*, 727 F.3d at 838). "The Government may provide an opportunity for effective cross-examination by disclosing a witness's real name to defense

7

counsel while the court still allows the witness to testify under an alias." *Id.* at 1142. But "this is not the only means to do so." *Id.* Courts "consider disclosure of a witness's real name as part of a balancing inquiry." *Id.* "[I]f the government provides defense counsel with sufficient background information on the anonymous witness (e.g., criminal history, nationality, etc.), then withholding the witness's name or address does not necessarily deprive the defendant of an opportunity for effective cross-examination." *Id.* at 1143.

### III. Analysis

Applying this framework here, the Court finds that the Government has made an insufficient showing to justify secrecy. Though the Government's plan to disclose the CRI's identity to defense counsel (but not Defendants themselves) makes it more likely that Defendants will have an opportunity for effective cross-examination despite using a pseudonym, *see Mohamed*, 727 F.3d at 838, the Government must first produce evidence to justify a departure from ordinary expectations of transparency, *Gutierrez de Lopez*, 761 F.3d at 1140. The Government has not done so.

Courts that have affirmed the use of anonymous testimony "have done so in part because the Government produced specific evidence of a threat." *Id.* at 1144. Recall that in *Celis*, for example, "the government presented evidence that in Colombia the [drug trafficking organization] had killed people suspected of helping to arrest [one of the defendants] and had threatened to kill cooperating witnesses." 608 F.3d at 833. And in *El-Mezain*, "[t]he Government showed that Hamas and other terrorist organizations seek out the true identities of [Israeli Security Agency] agents and their families and publish descriptions of ISA officers on websites so that they can be targeted." 664 F.3d at 492; *see*

8

*also, e.g.*, *Ramos-Cruz*, 667 F.3d at 501 (anonymous testimony permissible where witnesses were not eyewitnesses, the Government provided affidavits by the witnesses, and the district court examined them in camera to verify that the affidavits were still accurate years after they were sworn for an earlier trial).

Here, in contrast, the Government's current justification relies on the assumption "that anyone who cooperates in a case with cartel connections faces danger." *Gutierrez de Lopez*, 761 F.3d at 1145 (citing *Ramos-Cruz*, 667 F.3d at 501). The Government simply asserts that "[a] quick phone call or text from the Defendants to other members of the organization would immediately allow for the world-wide disclosure of the [CRI's] identity which could easily lead to locating a photo of him, his address, and the location of his family members." (Doc. 181 at 4; Doc. 183 at 5.) It does not support this "generalized assertion[ ]" with so much as a "sealed affidavit[ ] or any other specific evidence of a threat." *Gutierrez de Lopez*, 761 F.3d at 1145. This showing "fails to pass muster under the Confrontation Clause." *Id.*; *compare Ramos-Cruz*, 667 F.3d at 501 (finding sufficient "level of specificity" in affidavits where witnesses "specifically explained the heightened level of danger to which El Salvadorians who testify against MS–13 in U.S. courts are subject" and "connected that threat to the specific investigative work they perform in El Salvador").

The Court also takes into account that the CRI's credibility is particularly important to Ms. Violante-Lujano's case. Here, unlike in many cases, the CRI is an eyewitness who took part in the prior drug sale. *Compare Mohamed*, 727 F.3d at 838 (witness was an FBI linguist who reviewed an initial translator's translation of a video for accuracy); *Ramos-*

9

*Cruz*, 667 F.3d at 501 ("reiterat[ing] the limited focus of the witnesses' testimony"—"[t]hey proffered no evidence directly involving [the defendant] or his activities" and "merely provided background information about the internal workings of MS–13 generally"). As the Court noted in a prior order, Ms. Violante-Lujano's "primary defense appears to be that she was merely an unwitting driver," and "[e]vidence that she drove Mr. Maldonado-Benitez to" the prior drug sale "tends to undermine this defense by showing she was in on the plan." (Doc. 179 at 9 (citing Doc. 144 at 1–3).) Ms. Violante-Lujano is apparently not shown in the video of the prior sale. (*See* Doc. 179 at 10–11.) So the CRI's testimony—whether the CRI testifies that Ms. Violante-Lujano was present or absent—could be crucial to the jury's evaluation of her knowledge and intent. The CRI's credibility will therefore be important to her defense.

All told, the Government has failed to show a public interest in withholding the CRI's identity from both the jury and Defendants, so this interest does not outweigh Defendants' rights to prepare a defense.

## IV.  Order

Based on the submissions and the entire file and proceedings herein, **IT IS HEREBY ORDERED** that:

1. The Government's Motion for a Protective Order [Doc. 180] is **DENIED**;

2. The Government's Motion in Limine to Use a Pseudonym [Doc. 182] is **DENIED**; and

3. The Government shall inform Defendants and the Court as soon as possible whether it intends to identify the CRI or forego introducing evidence of the alleged transaction in Georgia.

Dated:  April 22, 2025                         /s/ Susan Richard Nelson
                                               SUSAN RICHARD NELSON
                                               United States District Judge